## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ )<br>RANDOLPH S. KOCH, )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>WILLIAM H. DONALDSON *et al.,* )<br> )<br> Defendants. )<br>_____ ) | Civil Action No. 03-1812 (PLF/JMF) |

## REPORT AND RECOMMENDATION

This matter is before me for a Report and Recommendation on <u>Defendant's Motion to Dismiss and for Summary Judgment</u> and <u>Plaintiff's Motion for Continuance Under Rule 56(f) to Complete Needed Discovery and Motion for Jurisdictional Discovery</u>.  For the reasons stated below, I recommend that defendant's motion be granted and that plaintiff's case be dismissed in its entirety.

## INTRODUCTION

Plaintiff pro se is Randolph S. Koch, a Financial Analyst in the Division of Investment Management at the Securities and Exchange Commission ("SEC").  <u>Complaint</u> ("Compl.") ¶ 15; <u>Plaintiff's Opposition to [Defendants'] Motion to Dismiss or for Summary Judgment and Plaintiff's Motion for Continuance Under Rule 56(f) to Complete Needed Discovery and Motion for Jurisdictional Discovery</u> ("Plains. Opp.") at 2.  Defendants are 1) William H. Donaldson, Chairman of the SEC, 2) Paul Roye, Director of the Division of Investment Management, 3) Barry Miller, Associate Director of the Division of Investment Management, and 4) Frank J. Donaty, Assistant Director of the Division of Investment Management. Compl. ¶¶ 16-19.  The

gravamen of plaintiff's complaint is that he was deprived of his First Amendment rights under the Constitution. Compl. ¶ 1.

## DISCUSSION

I.   <u>Standards of Review</u>

"Federal courts are courts of limited jurisdiction and only can adjudicate those cases that fall within Article III of the Constitution and a congressional authorization enacted thereunder." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004).  Under Rule 12(b), a defendant may, prior to responding to the merits of plaintiff's complaint, assert numerous defenses to the court's assertion of its jurisdiction. <u>Id.</u> at § 1342. Motions to dismiss, therefore, do not address the merits of the complaint, but rather allow for the speedy and efficient resolution of cases in the pretrial phase. <u>Id.</u>

In this case, defendants have moved to dismiss based, *inter alia*, on the Court's lack of jurisdiction over the subject matter, under Rule 12(b)(1).  "When a court rules on a Rule 12(b)(1) motion, it may 'undertake an independent investigation to assure itself of its own subject matter jurisdiction.'" <u>Settles v. United States Parole Comm'n</u>, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (quoting <u>Haase v. Sessions</u>, 835 F.2d 902, 908 (D.C. Cir. 1987)).  In considering such a motion, the court is not limited solely to the facts articulated in the complaint. <u>Tootle v. Sec'y of the Navy</u>, 446 F.3d 167, 174 (D.C. Cir. 2006).  Rather, the court is free to consider materials outside the pleadings. <u>Id.</u>; <u>Herbert v. Nat'l Acad. of Sciences</u>, 974 F.2d 192, 197 (D.C. Cir. 1992).  The court must, however, refrain from any factual resolution of the evidence. <u>Settles v. United States Parole Comm'n</u>, 429 F.3d at 1107 ("To the extent that this was a factual resolution of [plaintiff's] allegations and a rejection of his theory of the case based on evidence submitted by

the [defendants], the district court exceeded the bounds of factual inquiry that . . . are appropriate

on review of a Rule 12(b)(1) motion.").  Finally, the court must construe the complaint in favor

of the complaining party, accepting the allegations made as true.  Warth v. Seldin, 422 U.S. 490,

501 (1975).

II.    Analysis

    A.    The Civil Service Reform Act ("CSRA")

Congress enacted the CSRA in 1978 for the express purpose of providing an "'exclusive

administrative and judicial remedy for federal employees challenging adverse employment

actions.'" Gardner v. United States, No. 96-CV-1467, 1999 WL 164412, at *6-7 (D.D.C. 1999)

(citing Keen v. Brown, 958 F. Supp. 70, 72 (D. Conn. 1997)).  See also United States v. Fausto,

484 U.S. 439, 445 (1988) (noting that the CSRA "replaced [a] patchwork system [of statutes and

rules] with an integrated system of administrative and judicial review, designed to balance the

legitimate interests of the various categories of federal employees with the needs of sound and

efficient administration."); LeBlanc v. United States, 50 F.3d 1025, 1029 (Fed. Cir. 1995) ("The

Civil Service Reform Act . . . created a comprehensive system of procedural protections for civil

service employees faced with adverse personnel actions.  This framework for review of certain

types of personnel actions essentially preempted the field, superseding the haphazard

arrangement of administrative and judicial avenues for appeals of adverse actions to the Civil

Service Commission, the district courts, and the Court of Claims.").

Included in the collective remedies provided by the CSRA are protections for those who

engage in whistleblowing, defined as "(1) any disclosure of information by an employee, former

employee, or applicant for employment which the employee, former employee, or applicant

reasonably believes evidences–(A) a violation of any law, rule, or regulation; or (B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 1213(a)(1)(A), (B).[1]  If an employee believes he or she has been retaliated against for engaging in whistleblowing, the employee may petition the Office of Special Counsel ("OSC") of the Merit Systems Protection Board ("MSPB"). 5 U.S.C. § 1213(b).[2]  If dissatisfied with the decision rendered by the OSC, the employee may then file an Individual Right of Action ("IRA") with the MSPB. 5 U.S.C. § 1221.  Finally, if the employee is dissatisfied with the decision of the MSPB, he or she may file suit with the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 1214(c)(1), (2); 5 U.S.C. § 7703(b).

B.     The Facts

In August of 1999, plaintiff wrote an e-mail to various SEC officials, complaining of time and attendance abuses by several supervisors. Compl. ¶ 2.  Plaintiff sent a copy of the e-mail to the SEC's Inspector General and to several reporters. Compl. ¶ 4.  On September 1, 1999, plaintiff was placed on leave restriction. Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs. Mem."), Exhibit 1.  On March 2, 2000, plaintiff filed a charge with the Federal Labor Relations Authority ("FLRA"), claiming that his placement on restricted leave was done in retaliation for his having engaged in protected union activity. Id., Exhibit 2.

On June 20, 2000, defendants issued plaintiff a notice of proposed suspension. Id.,

---

[1] All references to the United States Code are to the electronic versions that appear in Westlaw and Lexis.

[2] In some cases, an employee may have the right to appeal directly to the MSPB. 5 U.S.C. § 1214(a)(3).

Exhibit 1.  According to defendants, plaintiff failed to complete work assignments in a timely fashion, failed to comply with his supervisor's directives, failed to comply with leave restriction requirements, and was absent without leave (AWOL). Id.  After considering plaintiff's response to the notice of proposed suspension, defendants suspended plaintiff on August 23 of 2000. Id.

Prior to his suspension and prior to the resolution of his first FLRA charge, on August 7, 2000, plaintiff filed a second charge with the FLRA, again claiming that his proposed suspension was in retaliation for his involvement in protected union activity. Id., Exhibit 4.

On August 24, 2000, the FLRA determined that it would not issue a complaint in response to plaintiff's first FLRA charge. Id., Exhibit 2.  Plaintiff appealed the FLRA's decision and his appeal was denied on January 24, 2001. Id., Exhibit 3.

On June 25, 2001, plaintiff's appeal of the FLRA's decision dismissing his first FLRA charge was similarly denied. Id., Exhibit 5.

On August 28, 2003, plaintiff filed the instant suit.  He asserts that, within weeks of being placed on leave restriction, which was the "opening salvo in a longterm program of retaliatory harassment and abuse" by his supervisors. Compl. ¶ 7.  He seeks an order relieving him of the consequences of his suspension by "[o]rdering plaintiff's reinstatement into pay status for the week of August 28, 2000 through September 1, 2000, and payment of holiday pay for September 4, 2000." Compl. at 6.

C.     The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claims

In the case at bar, plaintiff seeks both monetary damages and injunctive relief, arguing

that defendants violated his rights under the First Amendment.[3]  Specifically, plaintiff claims that defendants engaged in a prohibited personnel practice by placing him on leave restriction in retaliation for his having engaged in whistleblowing.  Not only do the facts alleged in plaintiff's complaint clearly give rise to a claim under the CSRA, but the CSRA provides plaintiff with the exclusive means of redressing his grievances.

In Bush v. Lucas, 462 U.S. 367 (1983), petitioner, an aerospace engineer employed by the National Aeronautics and Space Administration ("NASA"), was demoted after publically criticizing one of NASA's flight centers. Id. at 369-70.  Petitioner initially pursued an administrative appeal of his demotion, claiming that his First Amendment rights had been violated. Id. at 370-71.  While that appeal was pending, however, petitioner filed suit in state court. Id. at 371.  The case was later removed to federal court, where summary judgment was granted in favor of NASA, the respondent. Id.  Petitioner appealed the decision but the Court of Appeals affirmed. Id.  That decision was then appealed to the Supreme Court. Id. at 372.

First, the Supreme Court acknowledged that Congress had neither expressly authorized the remedy sought by petitioner nor expressly precluded the court's creation of such a remedy by declaring that existing statutes provided the relief sought. Id. at 378.  The Court characterized the issue before it as follows: "The question is not what remedy the court should provide for a wrong that would otherwise go unredressed.  It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be

---

[3] An action that names agency officials in their official capacity and seeks only injunctive and declaratory relief is not barred by the sovereign immunity of the United States. Trudeau v. Fed. Trade Comm'n, — F.3d — , 2006 WL 2087122, at *6 n.11 (D.C. Cir. 06) (citing Hubbard v. EPA, 949 F.2d 453, 466 (D.C. Cir. 1991)).

augmented by the creation of a new judicial remedy for the constitutional violation at issue." Id.

at 388.  Ultimately, although the Court declined to create a new substantive legal liability,

holding instead that Congress was better situated to make such determinations, its decision not to

fashion a new remedy was based on its conclusion that petitioner's claim that he had been

retaliated against for exercising his First Amendment rights was the very type of challenge

covered by existing laws such as the CSRA:

> Federal civil servants are [ ] protected by an elaborate,
> comprehensive scheme that encompasses substantive provisions
> forbidding arbitrary action by supervisors and procedures-
> administrative and judicial- by which improper action may be
> redressed.  They apply to a multitude of personnel decisions that
> are made daily by federal agencies.  Constitutional challenges to
> agency action, such as [ ] First Amendment Claims . . . are fully
> cognizable within this system.

Id. at 385-86.

Several years later, in Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988), the Court of

Appeals for the District of Columbia Circuit noted that in deciding whether or not a remedy was

available to vindicate a constitutional right, the focus was properly on the comprehensiveness of

the statutory scheme at issue, and not the adequacy of the remedies afforded:

> [C]ourts must withhold their power to fashion damages remedies
> when Congress has put in place a comprehensive system to
> administer public rights, has "not inadvertently" omitted damages
> remedies for certain claimants, and had not plainly expressed an
> intention that the courts preserve *Bivens* remedies.

Id. at 228.  Accord Runkle v. Gonzales, 391 F. Supp. 2d 210, 235-36 (D.D.C. 2005); Kalil v.

Johanns, 407 F. Supp. 2d 94, 101 n.8 (D.D.C. 2005); Sculimbrene v. Reno, 158 F. Supp. 2d 1, 6-

7 (D.D.C. 2001); Mittleman v. United States Treasury, 773 F. Supp. 442, 453-54 (D.D.C. 1991).

See also Thompson v. Pope, 397 F. Supp. 2d 28, 34-36 (D.D.C. 2005) (discussing

comprehensiveness of statutory scheme created by Foreign Service Act). In other words, where

the primacy of the statutory scheme has been determined, the necessity of exhausting the

established procedures becomes clear.

In Convertino v. United States Dep't of Justice, 393 F. Supp. 2d 42 (D.D.C. 2005), the

court characterized this exhaustion as a Congressional means of controlling and limiting access

to the courts. Id. at 45-46. Of the mechanism for administrative review provided by the CSRA,

the court stated the following: "One of the fundamental 'structural elements' of this integrated

scheme of review 'is the primacy of the MSPB [Merit Systems Protection Board] for

administrative resolution' of personnel disputes, and 'the primacy of the United States Court of

Appeals for the Federal Circuit for judicial review.'" Id. at 46 (quoting United States v. Fausto,

484 U.S. 439, 449 (1988)).

In Convertino, plaintiff, an Assistant United States Attorney, sued the Department of

Justice, claiming, inter alia, that his First Amendment rights had been violated in that he suffered

retaliation by the Department after he publically criticized the Department's handling of a

criminal investigation and trial. Id. at 44. The court held that plaintiff had failed to exhaust his

administrative remedies. Id. Ultimately, the court concluded that because plaintiff's

constitutional claims were based on the same facts underlying his statutory claims, plaintiff had

to exhaust his administrative remedies. Id. More importantly, however, the court recognized the

independent significance of the exhaustion doctrine:

> [T]he exhaustion requirement exists because it serves four
> important purposes. First, it prevents litigants from circumventing
> Congress' carefully crafted remedial scheme. Second, it gives

> agencies the opportunity to correct their own mistakes or to exercise the discretion they have been granted.  Third, it eases the burden on the federal judiciary by allowing the parties and the agency to develop the facts in an administrative forum.  Finally, it will either focus the issues for judicial review or settle the dispute so that judicial review will become unnecessary.

Id. at 47 n.1 (quoting Martin v. EPA, 271 F. Supp. 2d 38, 45 (D.D.C. 2002)).

Thus, in enacting the CSRA, Congress clearly intended to provide an exclusive system for ensuring the rights of federal employees who engage in whistleblowing, whether through the provision of specific remedies or no remedies at all.  See LeBlanc v. United States, 50 F.3d 1025, 1030 (Fed. Cir. 1995) ("The CSRA superseded preexisting remedies for all federal employees, even those who had no remedy or only limited remedies under the new system, for all types of personnel action within its scope."); Steadman v. Governor, United States Soldiers' and Airmen's Home, 918 F.2d 963, 967 (D.C. Cir. 1990) ("[T]he Court has consistently held that congressional scheme precludes district courts from taking jurisdiction over CSRA-related claims"); Gardner v. United States, No. 96-CV-1467, 1999 WL 164412, at *7 (D.D.C. 1999) ("As mentioned above, 'the CSRA is the exclusive administrative and judicial remedy for federal employees challenging adverse employment actions.'"); Daly v. Dep't of Energy, 741 F. Supp. 202, 205 (D. Colo. 1990) ("Congress intended the CSRA . . . to provide the exclusive remedy for federal employees who suffer retaliation as a result of whistle blowing.").

Although plaintiff did, on September 7, 1999, file a complaint of whistleblower retaliation with the OSC, plaintiff withdrew that request on October 28, 1999.  Since the OSC never ruled on plaintiff's complaint, plaintiff therefore failed to exhaust his administrative remedies.  However, even if plaintiff had exhausted his administrate remedies, any appeal of the

9

decision of the MSPB would necessarily lie with the United States Court of Appeals for the

Federal Circuit and not with the District Court for the District of Columbia.  See 5 U.S.C. §

1214(c)(1), (2); 5 U.S.C. § 7703(b).

## CONCLUSION

I recommend that this case be dismissed for lack of jurisdiction over its subject matter.

**Failure to file timely objections to the findings and recommendations set forth in
this report may waive your right of appeal from an order of the District Court adopting
such findings and recommendations.  See Thomas v. Arn, 474 U.S. 140 (1985).**

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: